# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| REGINALD G. MCFADDEN, |
| *Plaintiff*, |
| v. |
| U.S. DEPARTMENT OF JUSTICE, |
| *Defendant*. |

Civil Action No. 15-1830 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Reginald McFadden is currently serving a sentence at the Attica Correctional Facility in New York for murder, rape, robbery and kidnapping. Proceeding *pro se*, he brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the Department of Justice to release various records relating to laboratory tests and other assistance provided by the FBI to local law enforcement authorities in the course of their investigation of these crimes.

In October 2015, the Court granted McFadden's motion for leave to proceed *in forma pauperis* ("IFP"). Dkt. 5. Approximately a year later, the Department moved to dismiss, or, in the alternative, for summary judgment, arguing that it had complied with its obligations under FOIA. Dkt. 26. Before ruling on that motion, however, the Court noted that McFadden had accumulated well in excess of three "strikes" within the meaning of 28 U.S.C. § 1915(g). Dkt. 32. The Court, accordingly, ordered that McFadden show cause on or before May 30, 2017, why his IFP status should not be rescinded. *Id.* In response, he argues that the Court should disregard some or all of his strikes and that, in any event, he should be permitted to proceed IFP because

he is under "imminent danger of serious physical injury" due to an alleged failure of prison officials to treat his Hepatitis C. Dkt. 33 (citing § 1915(g)).

Although seeking to invoke the "imminent danger" exception, McFadden does not contend that this FOIA action bears any connection to his medical condition. Accordingly, this case presents the question—unresolved to date by the D.C. Circuit—whether the "imminent danger" exception requires a nexus between the litigation in which the plaintiff seeks IFP status and the asserted imminent threat to his or her physical well-being. For the reasons explained below, the Court concludes that the exception is not available under these circumstances. Accordingly, the Court will **VACATE** its earlier order permitting McFadden to proceed IFP and will **REVOKE** his IFP status. If McFadden wishes to continue to pursue this action, he is **ORDERED** to pay the filing fee in full on or before October 10, 2017.

## I. BACKGROUND

McFadden's FOIA complaint against the Department seeks "records . . . of [forensic evidence] test results" from "three . . . separate criminal cases" that "were prosecuted" against him in the 1990s. Dkt. 1 at 1 (Compl.). He alleges that he submitted a FOIA request to the FBI to obtain these records but that the Department failed to "repl[y] or compl[y] with" its obligations under FOIA. *Id.* at 2.

McFadden did not pay the Court's standard $400.00 filing fee in full at the time he initiated this action; rather, he applied for IFP status, *see* Dkt. 2, which, under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), would permit him to "pay [a $350.00] filing fee in installments over time," *Asemani v. USCIS*, 797 F.3d 1069, 1072 (D.C. Cir. 2015) (citing 28 U.S.C. § 1915(a)(1), (b)). In support of his IFP application, McFadden attested that he "suffer[ed] from extreme poverty," Dkt. 2 at 2, and he attached his

prisoner account statement indicating that he carried a balance of only $2.15, Dkt. 3 at 1. On October 28, 2015, the Court granted his application to proceed IFP, excusing him from the payment of any "initial partial filing fee" and ordering that he pay "twenty percent" of his monthly income towards the "balance of the $350.00 filing fee" so long as the "amount in [his] account exceed[ed] $10[.00]." Dkt 5 at 1–2. To date, the Court has not received any partial payments from McFadden.

The Department answered McFadden's complaint, Dkt. 13, and began searching for records potentially responsive to his FOIA request in early 2016, *see* Dkt. 20 at 1. After some back-and-forth over the payment of fees associated with document production, *see* Minute Orders (June 14, 2016; June 21, 2016), the Department processed 322 pages of responsive records, releasing 67 pages in full, releasing 161 pages in part, and withholding 94 pages in full, *see* Dkt. 26-1 at 2 (Hardy Decl. ¶ 4). The Department mailed its "final release" of responsive records to McFadden in August 2016. Dkt. 25 at 1. It subsequently moved to dismiss or, in the alternative, for summary judgment, arguing that it had "fulfilled its obligations under [FOIA] in all respects." Dkt. 26 at 3. McFadden filed a timely opposition to that motion. *See* Dkt. 28.

Although the Department did not raise the issue in its motion, on April 17, 2017, the Court issued an order directing that McFadden show cause why the Court's earlier order granting him IFP status should not be vacated under 28 U.S.C. § 1915(g)'s "three-strikes rule." Dkt. 32. The Court explained that the three-strikes rule bars a prisoner from proceeding IFP if he has, "on [three] or more prior occasions, while incarcerated[,] . . . brought an action . . . that was dismissed on the grounds that it was frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Id.* at 1–2 (quoting § 1915(g)). The Court further noted that the rule does not bar a prisoner with three strikes from accessing the federal courts, but, instead, "requires

a prisoner who otherwise qualifies for IFP status to pay the full filing fee at the time of filing suit rather than in installments." *Id.* at 2 (quoting *Asemani*, 797 F.3d at 1072). The Court then identified five orders from other district courts that all classified McFadden as ineligible for IFP status under the three-strikes rule,[1] *id.* at 2–3; identified "two additional 'strikes'" from its "own review of the PACER database,"[2] *id.* at 3; and ordered that McFadden show cause why "his IFP status should not be rescinded under 28 U.S.C. § 1915(g)" or, alternatively, whether he "should be permitted to proceed with []his action IFP because he 'is under imminent danger of serious physical injury,'" *id.* (quoting § 1915(g)).

McFadden responded to the Court's order on May 1, 2017, with a series of arguments as to why his IFP status should not be revoked, *see* Dkt. 33 at 1–3 (discussed *infra*), including the contention that he qualified for the "imminent danger" exception to the three-strikes rule because he was suffering from "denial" of "[H]ep[atitis] C treatment." Dkt. 33 at 1–2. In light of

---

[1] *See, e.g.*, *McFadden v. Fischer*, No. 1:13-cv-559, Dkt. 6 at 3 (W.D.N.Y. July 1, 2013) ("[McFadden] has already been determined to have had three or more cases dismissed for 'strike reasons.'"); *McFadden v. Patterson*, No. 9:10-cv-127, Dkt. 12 at 4 (N.D.N.Y. June 22, 2010) ("[McFadden] is well aware of the 'three[-]strikes' rule, which has been enforced against him in [the Northern District of New York] since 2001 . . . . [T]his Court also finds that [McFadden] has brought actions on three occasions which have been dismissed pursuant to 28 U.S.C. § 1915(e)(2)."); *McFadden v. Annucci*, No. 9:05-cv-1235, Dkt. 7 at 4 (N.D.N.Y. Dec. 8, 2005) (collecting five cases in which McFadden's "claims were deemed frivolous by the Court . . . and dismissed pursuant to 28 U.S.C. § 1915," and denying his IFP application); *McFadden v. Senkowski*, No. 9:01-cv-16, Dkt. 10 at 4 (N.D.N.Y. May 8, 2001) ("Prior to filing this action, McFadden had more than three complaint dismissed pursuant to 28 U.S.C. § 1915."); *McFadden v. Parpan*, 16 F. Supp. 2d 246, 247 (E.D.N.Y. 1998) ("[McFadden], while incarcerated and prior to the filing of this action, had three prior suits dismissed by federal courts as frivolous: *McFadden v. Gribetz*, No. 95-4312 (S.D.N.Y. June 9, 1995); *McFadden v. Kralik*, No. 95-4320 (S.D.N.Y. June 9, 1995); [and] *McFadden v. People of the State of New York*, No. 95-6717 (S.D.N.Y. Aug. 22, 1995).").

[2] *See, e.g.*, *McFadden v. Patterson*, No. 10-3505, Dkt. 22 at 1 (2d Cir. Jan. 14, 2011) (dismissing McFadden's appeal "because it lack[ed] an arguable basis in law or fact" and citing 28 U.S.C. § 1915(e)); *McFadden v. Lehman*, 97-cv-399, Dkt. 8 (May 23, 1997) (M.D. Pa.) (dismissing McFadden's complaint "pursuant to 28 [U.S.C. §] 1915(e)(2)(B)(i) as frivolous").

4

McFadden's filing, the Court ordered the Department to respond and, specifically, sought briefing on whether "the 'imminent danger' exception applies even where the complaint does not seek relief related to the imminent danger.'" Minute Order (May 2, 2017). In its response, the Department stated that the "Court ha[d] correctly noted that [McFadden] has had far more tha[n] the requisite three strikes," Dkt. 34 at 1; it attached a "compilation of several docket reports generated through PACER" depicting "a fraction of the actions" brought by McFadden that qualified as strikes, *id.* at 1–2 n.3; and it argued that, because McFadden's "action under FOIA" was "wholly unconnected to the allegations of danger" that he raised in his response to the Court's order, he should not be permitted to assert the "imminent danger exception," *id.* at 4.

## II. ANALYSIS

**A.    Three Strikes**

Under 28 U.S.C. § 1915(g), a dismissal constitutes a "strike" if a court concludes that the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Here, the Department has identified seven federal actions filed by McFadden that it asserts were dismissed on one or more of these grounds,[3] *see* 34-1, the Court has identified two others, *see* Dkt. 32 at 3, and McFadden does not dispute that the Western, Northern, and Eastern Districts of New York have all identified at least three of his complaints that meet this standard, *see id* at 2–3; *see also* Dkt. 33. Rather than contest that he has three strikes under the PLRA, McFadden offers three reasons why those strikes should not be considered by the Court. *See* Dkt. 33.

First, McFadden asserts that two of the courts that specifically cited his prior strike history as grounds for dismissing his complaints "misunderstood [his] complaint[s'] allegations." *Id.* at 1. But whether the Western and Northern Districts of New York "misunderstood" the

---

[3] McFadden has not challenged the Department's assertions, and as explained below, does not meaningfully contest that he has accumulated at least three strike dismissals.

5

complaints at issue in *those* cases has no bearing on the accuracy of their conclusions that McFadden had already accumulated three strikes in *earlier* cases.

Second, McFadden argues that the parties have "spent much time [and] expense" in litigating his FOIA complaint, *id.* at 2, and suggests that the Department's failure to raise the three-strikes issue constitutes a waiver of that defense. The Court agrees with the premise of McFadden's argument—much effort has been expended in this case and that burden might have been avoided had the Department raised the three-strikes issue early in the proceeding. But the Court cannot accept McFadden's conclusion. The three-strikes rule is not a defense that the defendant is free to assert or to waive. It is a rule designed to protect the public fisc and the courts. *See In re Kissi*, 652 F.3d 39, 41 (D.C. Cir. 2011) (explaining that Congress enacted the three-strikes rule "to deter prisoners from filing frivolous lawsuits, which waste judicial resources and compromise 'the quality of justice enjoyed by the law-abiding population'" (quoting *In re Grant*, 635 F.3d 1227, 1230 (D.C. Cir. 2011))). Accordingly, although it would have been preferable had the Department raised the issue, that omission does not provide an exception to the three-strikes rule.

Finally, McFadden argues that the three strikes that he accumulated in 1995 should not be "unfairly used against [him]" because those "three cases were decided before [the PLRA became] effective [in] 1996." *Id.* at 2. As the Department correctly points out, *see* Dkt. 34 at 3, however, the D.C. Circuit has squarely foreclosed this argument, *see Ibrahim v. District of Columbia*, 208 F.3d 1032, 1036–37 (D.C. Cir. 2000) ("[W]e join the eight other circuits that have considered the question and concluded that cases dismissed [for strike reasons] prior to the effective date of the PLRA count as 'strikes' under § 1915(g).").

The Court, accordingly, concludes that McFadden has accumulated at least three "strikes" within the meaning of § 1915(g).

**B.     "Imminent Danger" Exception**

McFadden seeks to sidestep the three-strikes rule by claiming that he satisfies § 1915(g)'s "imminent danger" exception. Dkt. 33 at 1–2. Under that exception, "even if a prisoner has three strikes, he may proceed IFP—*i.e.*, he may pay the filing fee in installments—if he is 'under imminent danger of serious physical injury.'" *Asemani*, 797 F.3d at 1072 (quoting § 1915(g)). The prisoner need not include qualifying allegations of imminent danger in his original complaint—he may make the necessary "aver[ments]" in any "timely filing"—but the exception "applies only if the danger existed at the time the prisoner filed his complaint.'" *Id.* at 1074–75. McFadden claims that he was in "imminent danger" at the time he filed his complaint because prison officials were denying him treatment for his Hepatitis C condition. Dkt. 33 at 2.

McFadden's current complaint, however, has nothing to do with the treatment he is or is not receiving for his Hepatitis C. This is not, for example, an action in which McFadden seeks a court order requiring prison officials to administer medications necessary to treat his medical condition; it is a FOIA action in which he requests records relating to criminal proceedings brought more than twenty years ago. Accordingly, McFadden's contention requires that the Court decide whether § 1915(g)'s safe harbor includes a nexus requirement.

To date, the D.C. Circuit has expressly declined to resolve that question. *See Asemani*, 797 F.3d at 1074 ("[T]his court has not resolved whether § 1915(g) requires that there be some nexus between the imminent danger alleged and the prisoner's underlying claim [and] [w]e do not resolve that issue in this case." (citing *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 421

7

(D.C. Cir. 2009))). Multiple decisions from this district,[4] however, as well decisions in every circuit to have resolved the issue,[5] agree that § 1915(g) requires some nexus between the imminent danger asserted by the prisoner and the cause of action the prisoner seeks to litigate IFP. This Court joins that consensus.

The text of the exception does not expressly answer this question—it merely states that if the "prisoner is under imminent danger of serious physical injury," the three-strikes rule does not apply. But as the Second Circuit explained in *Pettus v. Morgenthau*, the "unmistakable purpose" of the PLRA's "imminent danger" exception is "to permit an indigent three-strikes prisoner to

---

[4] *See, e.g.*, *Alston v. F.B.I.*, 747 F. Supp. 2d 28, 30–31 (D.D.C. 2010) ("To qualify under th[e imminent danger] exception, the prisoner must show that [his] action is connected to the imminent danger" he alleges.); *Warren v. McLennan Cty., Tex.*, No. 14-426, 2014 WL 1265951, at *1 (D.D.C. Mar. 18, 2014) (citing *Alston* for the proposition that, because the plaintiff's "medical ailments have 'nothing to do with' his claims," the imminent danger exception does not apply); *McCoy v. F.B.I.*, 775 F. Supp. 2d 188, 190 (D.D.C. 2011) (citing *Alston* and explaining that, because the plaintiff's "action under [FOIA] is wholly unconnected to the generalized allegations of danger [he] allegedly faces in prison," the imminent danger exception does not apply).

[5] *See, e.g.*, *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) ("We agree with the district court that § 1915(g) allows a three-strikes litigant to proceed IFP only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges."); *Ball v. Hummel*, 577 Fed. App'x 96, 96 n.1 (3d Cir. 2014) (per curiam) ("To fulfill the 'imminent danger' requirements, [the plaintiff] must demonstrate an adequate nexus between the claims [s]he seeks to pursue and the 'imminent danger [s]he alleges.'" (quoting *Pettus*, 554 F.3d at 296) (second and third alterations in original)); *Butler v. Pendergraff*, 434 Fed. App'x 377, 378 (5th Cir. 2011) (per curiam) (dismissing plaintiff's appeal as "frivolous" because the "health problems" that constitute his claimed imminent danger "have [no]thing to do with the denial-of-access-to-the-courts claim asserted in his original complaint" and noting that, "to proceed IFP, civil rights claims of [a] prisoner . . . must be related to imminent danger of serious physical injury"). *But see Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 588 (6th Cir. 2013) ("[W]e decline to reach whether § 1915(g) incorporates a nexus requirement, as [Defendant] would not prevail even if we were to adopt the Second Circuit['s *Pettus*] standard."); *Barber v. Krepp*, 680 Fed. App'x 819, 821 (11th Cir. 2017) (per curiam) (declining to decide whether "§ 1915(g)'s 'imminent danger' exception requires proof of . . . a nexus" because, even if it did, the plaintiff had alleged such "a nexus between the harm he has suffered and the defendant's inaction").

8

proceed IFP in order to obtain a judicial remedy for an imminent danger." 554 F.3d 292, 297 (2d Cir. 2009). "Absent some nexus between a complaint's claims and its allegations that a plaintiff is under imminent danger of serious physical harm," however, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." *Id.* at 297–98. The Third Circuit is in accord, pointing out that, because Congress "[r]ecogniz[ed] that it could take prisoners a significant period of time to obtain the filing fee," it "created a limited exception aimed at preventing *future* harms" to prisoners unable to pay in full up-front. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc) (emphasis added). This "imminent danger" "safety valve for the 'three[-]strikes' rule," the court explained, was meant to "prevent impending harms, not those harms that had already occurred." *Id.*

This is not a circumstance, moreover, in which the Court must choose between a conclusion clearly dictated by the plain and unambiguous text of a statute and common sense. *See*, *e.g.*, *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527–30 (1989) (Scalia, J., concurring in the judgment). Rather, the language of the exception itself is, at most, incomplete; it neither imposes a nexus requirement nor forecloses the imposition of such a requirement. But, more importantly, the exception cannot be read in isolation from its "context" and "place in the overall statutory scheme," *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), and that context supports a nexus requirement. In particular, § 1915(g) starts with a general prohibition declaring that "[i]n no event shall a prisoner bring *a civil action* [relying on IFP status] . . . if the prisoner has" three or more strikes. 28 U.S.C. § 1915(g) (emphasis added). It is only after imposing this broad

9

prohibition that the statute then creates an exception for a prisoner "under imminent danger of serious physical injury." *Id.* Understood in this context, the exception is best construed to modify the preceding reference to "a civil action" and to mean that the prisoner may not bring a *civil action* relying on IFP status unless that *civil action* relates to an "imminent danger of serious physical injury" to the prisoner. *Id.*

That reading of the statute is not the only reading that is linguistically available. But it is the only one that makes sense of the language *and* purpose of the statute. Congress enacted the PLRA, in relevant part, because it was concerned "that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained [IFP] status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants." *Abdul-Akbar*, 239 F.3d at 312; *see also Asemani*, 797 F.3d at 1072 ("Congress enacted the PLRA in response to concern that prisoners were 'flooding the courts with meritless claims.'" (quoting *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1356 (D.C. Cir. 1998)). It is implausible, to say the least, to suggest that, having created this rule, Congress then created an exception that would swallow the rule, but only for those who by happenstance face entirely unrelated risks of imminent danger of serious physical injury.

The Court, accordingly, concludes that the "imminent danger" exception is best construed to incorporate a nexus requirement.

Finally, the Court need not decide how strong a nexus between a complaint's allegations and the circumstances that give rise to the claimed imminent danger is required before an applicant may invoke the exception. *Compare Pettus*, 554 F.3d at 298–99 (holding that a "nexus exists" only when "the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint" and is capable of being

10

"*redress*[*ed*]" by "a favorable judicial outcome"), *with Alston*, 747 F. Supp. 2d at 31 (holding that a prisoner qualifies for the exception if he can "show that [his] action is connected to the imminent danger"). Here, there is no connection of any sort between McFadden's FOIA complaint and his allegations that he is currently suffering from untreated Hepatitis C.

This is not the type of situation that the "imminent danger" exception was meant to guard against, and the Court now joins the multitude of courts[6] holding that a prisoner may invoke the exception only if he can establish a nexus between the condition that gives rise to the threat of serious physical injury he faces and the cause of action he seeks to pursue with IFP status.

## C. Proper Three-Strikes Remedy

Because the Court concludes that the PLRA's "imminent danger" exception does not apply to McFadden's FOIA complaint, the three or more strikes he has accumulated render him ineligible for IFP status under 28 U.S.C. § 1915(g). That determination, however, does not necessarily require dismissal of McFadden's complaint. *See Matthews v. FBI*, No. 15-cv-569, ---F. Supp. 3d---, 2017 WL 1842548, at *5–6 (D.D.C. May 5, 2017). Rather, the "better procedure, which courts in this Circuit typically follow," is to "revoke [the plaintiff's] IFP status

---

[6] *See supra* nn.4–5; *see also, e.g.*, *McCarthy v. Ebbert*, No. 1:cv-17-0401, 2017 WL 2378015, at *1 (M.D. Pa. June 1, 2017); *Cerilli v. Malloy*, No. 3:16-cv-2087, 2017 WL 188135, at *2 (D. Conn. Jan. 17, 2017); *McDaniels v. Fed. Bureau of Prisons*, No. 15-cv-6163, 2016 WL 6997525, at *3, *5 (S.D.N.Y. Nov. 29, 2016); *Stine v. Fed. Bureau of Prisons*, 1:13-cv-1883, 2015 WL 5255377, at *2–5 (E.D. Cal. Sept. 9, 2015); *Johnson v. Sonoma Cty. Main Adult Det. Facility*, No. 14-cv-05397, 2015 WL 1744281, at *2 (N.D. Cal. Apr. 15, 2015); *Grandinetti v. Judiciary of Haw.*, No. 15-00089, 2015 U.S. Dist. LEXIS 52996, at *8 n.3 (D. Haw. Apr. 6, 2015); *Pinson v. Frisk*, No. 13-cv-05502, 2015 WL 738253, at *3 (N.D. Cal. Feb. 20, 2015); *Credico v. Belfonti*, No. 14-4219, 2014 U.S. Dist. LEXIS 99227, at *3 (E.D. Pa. July 22, 2014); *Lewis v. Stephens*, No. H-14-0002, 2014 WL 108909, at *2 (S.D. Tex. Jan. 9, 2014); *Perry v. Boston Scientific Family*, No. 13-733, 2013 WL 6328760, at *2 (D. Minn. Dec. 5, 2013); *Dickerson v. Vienna Corr. Ctr.*, No. 13-cv-00557, 2013 WL 3421903, at *2 (S.D. Ill. July 8, 2013); *Corrion v. Heyns*, No. 12-cv-11096, 2012 U.S. Dist. LEXIS 59102, at *4 (E.D. Mich. Apr. 27, 2012); *Davis v. U.S. Dist. Court*, No. 11-3135, 2012 U.S. Dist. LEXIS 30243, at *2 (D. Kan. Mar. 7, 2012); *Williams v. Boner*, No. 1:11-cv-838, 2012 U.S. Dist. LEXIS 5555, at *3 (M.D.N.C. Jan. 18, 2012).

and order that the filing fee be paid in full within thirty days." *Id.* at 6 (collecting cases employing this procedure); *see also id.* (explaining that a "disqualified prisoner" should be afforded "the opportunity to pay the fee and to continue with his case"). If McFadden fails to pay the full amount of the filing fee on or before the date designated below, however, the Court will dismiss his action without prejudice.

## CONCLUSION

In light of the above, it is hereby **ORDERED** that the order granting McFadden leave to proceed *in forma pauperis*, Dkt. 5, be **VACATED** and that his *in forma pauperis* status be **REVOKED**. It is further **ORDERED** that McFadden pay the balance of the filing fee on or before October 10, 2017, or the Court will dismiss his case without prejudice. This case is hereby **STAYED** until October 10, 2017.

    **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 7, 2017